## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ADAM KORESJZA,

              Petitioner,

                                         Case No. 14-11716

       v.                             HON. TERRENCE G. BERG

SHIRLEE HARRY,

              Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING PETITIONER'S PENDING MOTIONS, (3) GRANTING A CERTIFICATE OF APPEALABILITY, AND (4) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS

This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Adam Koresjza was convicted after he pled guilty in the Wayne Circuit Court to ten criminal charges arising out of his participation in an embezzlement scheme. The most serious convictions were for one count of conducting a criminal enterprise, MICH. COMP. LAWS §750.159, and for three counts of embezzlement over $100,000. MICH. COMP. LAWS §750.1747. He was sentenced to concurrent terms of 78 months to 20 years for these three offenses and lesser concurrent terms for his other six offenses. The petition raises three claims: (1) the trial court failed to specifically enforce the terms of the plea agreement, (2) Petitioner's plea was coerced by an illusory promise of a fixed sentence, and (3) Petitioner's right to a speedy trial was violated.[1] The Court will deny the petition because the state court

---

[1] Petitioner has filed multiple supplemental pleadings in this case. In some of these pleadings he appears to raise claims of ineffective assistance of counsel which were never presented to the state courts. Petitioner has withdrawn his unexhausted claims, and is proceeding on the three exhausted claims listed above. See Dkts. 26 and 27, p. 16.

adjudication of his claims did not involve an unreasonable application of clearly established Supreme Court law. The Court will also deny Petitioner's pending motions, but will grant Petitioner a certificate of appealability and permission to proceed on appeal in forma pauperis.

## I.  FACTUAL BACKGROUND

Petitioner was investigated and charged with crimes alleging that he embezzled large sums of money from the City of River Rouge. The case did not go to trial. Instead, on September 27, 2010, Petitioner pled guilty to one count of conducting a criminal enterprise, three counts of embezzlement over $100,000, four counts of embezzlement over $50,000, and two counts of failing to file tax returns.

At the plea hearing, Petitioner's counsel stated that the plea agreement had been negotiated with the Michigan Attorney General's office and reduced to writing, and it included a document referred to by the parties as "Exhibit A." (Tr. 9/27/10, 5). Exhibit A was to be kept out of the public record because Petitioner had been assaulted, and it detailed Petitioner's promises to cooperate with authorities regarding other prosecutions. (*Id.* at 5-6). Petitioner signed the plea agreement and Exhibit A. (*Id.* at 10).

Respondent has filed a copy of Exhibit A under seal with the Court. (Dkt. 22). The Court has reviewed the document. In general terms the document required Petitioner to cooperate with another specified prosecution and indicated the plea agreement would be invalidated if he did not do so. The exhibit does not contain any information regarding a sentencing agreement.

Petitioner attached a copy of the written plea agreement to his petition. In pertinent part it states that after pleading guilty, Petitioner would be sentenced to a fixed term of 78 months for the racketeering and embezzlement charges and lesser fixed terms for the other charges. The agreement also provided that if Petitioner was able to make restitution by a certain date, he would be sentenced to a fixed term of 60 months instead of 78 months. (Plea Agreement, Dkt. 1, Ex. A, ¶ 3).

The trial court placed Petitioner under oath and informed him of all the trial rights he would be waiving by pleading guilty. (Tr. 9/27/10, 11-13). Petitioner denied that anyone had forced him to plead guilty or had promised him anything other than what was set forth in the plea agreement. (*Id.* at 13). The prosecutor then recited the ten counts Petitioner would be pleading guilty to, and she stated that if a specified sum of restitution—$706,143.98—was made by a certain date, the sentence on the most serious charges would be 60 months, but if restitution was not made the sentence would be 78 months. (*Id.* at 16-17). Petitioner then testified to a factual basis for the plea. (*Id.* at 18-23). The trial court set a sentencing date after the deadline for Petitioner to make restitution.

The sentencing hearing was not held until June 3, 2011. Petitioner was unable to make the required amount of restitution. (Tr. 6-3-2011, 14). The court stated it was therefore sentencing Petitioner under the terms of the plea agreement to 78 months for the four most serious counts, and 34 months on the other counts. (*Id.* at  20-21).

The court clerk asked about the "tail" for the sentences. (*Id.* at 22). The court noted that the statutory maximum for the criminal enterprise offense was 40 years and the statutory maximum for the more serious embezzlement offenses was 30 years. (*Id.* at 22). The record indicates that the parties were uncertain as to whether the 78 months was the maximum or whether it was the statutory maximum.  The prosecutor responded that 78 months was the "tail" because of the agreement. (*Id.*) The clerk stated there had to be both a minimum and maximum term. (*Id.*) Defense counsel then said the maximum term would have to be 78 months because that was what was agreed to. (*Id.*) The court stated that 78 months could not be the maximum sentence. (*Id.*) The proceedings then went off the record for about an hour.

When proceedings resumed, the prosecutor indicated that she spoke with her division chief, and she learned that under Michigan law, the maximum term was set by statute, and the agreed-to term would have to serve as the minimum term. (*Id.* at 23). The prosecutor stated that she could at least eliminate the habitual offender charge and reduce the maximum sentence to 20 years on the most serious charges and 15 years on the other charges. (*Id.*) The prosecutor's position seemed to be that these maximum terms had to be included in the plea agreement because "we don't have the authority to change Michigan law." (*Id.* at 24).

Defense counsel vehemently disagreed: "Our position is that we had agreed to a maximum. Not one moment, not one second, not one minute, not one month more [than] 78 months, period. That was designed and drafted by the Attorney General's

4

office . . . And I just spoke with Mr. Koresjza, his understanding was that he would serve a maximum of 78 months in prison . . . I would like to enforce the agreement." (*Id.* at 25-26). The court adjourned the hearing. (*Id.* at 26-27). It found that there "had not been a meeting of the minds here. Because there's no question that Michigan law requires that there be a minimum and a maximum in terms of the sentence." (*Id.*)

The trial court docket sheet shows that sentencing hearings were rescheduled for June 27, 2011, and July 21, 2011, but both hearings were adjourned. The next hearing on the case was heard on July 29, 2011. Petitioner asserts, and the Court will accept as true, that during this interval the trial court offered Petitioner the opportunity to withdraw his plea and proceed to trial, but Petitioner rejected the offer and continued to assert his right to the original sentencing agreement.

Respondent was only able to produce an excerpt of the transcript for July 29, 2011. A part of the tape is missing due to a malfunction in the recording device. (*See* Dkt 1, Ex. G) (affidavit of court reporter). The relevant portion of the existing transcript starts with the court indicating that the sentencing agreement had been altered to comply with state law:

> The Court was correcting specific provisions of this plea agreement because it was clear to this court that the record and the defendant's understanding of the terms of his sentencing, meaning, the amount of time that he would be incarcerated, were not clear. That is what this Court has corrected. And there isn't anything else that has been brought to this Court's attention that needs to be corrected.

(*Id.* at 7-8).

The court then stated it was sentencing Petitioner "pursuant to the plea agreement" to 78 months to 20 years on the four most serious counts and to lesser concurrent terms on the other counts. (*Id.* at 9-10). The court then asked if the parties agreed with the sentences imposed, and both the prosecutor and defense counsel indicated that they did. (*Id.* at 12). Defense counsel stated: "Yes, your Honor, I believe you recited what was in the plea agreement." (*Id.*)

Respondent has submitted an affidavit of the prosecutor summarizing the missing portion of the proceedings. The prosecutor asserts that before the court passed sentence, it set forth the plea agreement with the minimum and maximum sentences, and it explained to Petitioner how the Michigan sentencing guidelines operate. She further asserts that Petitioner affirmed that he understood the agreement and that the maximum sentences would be set by statute. (Dkt. 17, Ex. A).

Petitioner strongly disagrees with the prosecutor's characterization of what occurred between the aborted sentencing hearing and the final sentencing hearing. He asserts that he never agreed to the new sentence, but that he only indicated his understanding of what he would be sentenced to. He asserts that he never abandoned his position that he was entitled to enforcement of the original agreement to a flat 78-month term. He further asserts that he rejected the offer to withdraw his plea because he had already fulfilled his obligations under the agreement and no longer had any leverage to negotiate another plea deal. (*See, e.g.,* Dkt. 27-1, pp. 4, 7; Dkt. 29).

Following his conviction and sentence, Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals as well as a pro se supplemental brief, raising the following claims:

> I. The failure of the trial court to specifically enforce the terms of the sentence agreement resulted in a violation of defendant's right to due process of law.

> II. Was plea a coerced and illusory plea with fraud in the inducement?

> III. Was speedy trial violated?

The Michigan Court of Appeals denied Petitioner's delayed application "for lack of merit in the grounds presented." *People v. Koresjza*, No. 311260 (Mich. Ct. App. April 26, 2013). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, where he raised the same claims that he raised in the Michigan Court of Appeals, as well as several additional claims. On October 28, 2013, the Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Koresjza*, 838 N.W.2d 163 (Mich. 2013).

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d) sharply curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas corpus action if the claims were rejected on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

Demonstrating that a state court unreasonably applied clearly established Supreme Court law is no easy task because "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

8

fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

## III.   ANALYSIS

### A. Specific Performance of the Plea Agreement

Petitioner's first two claims seek specific performance of the original plea agreement. His first claim argues that the parties agreed to fixed terms, the longest of which was 78 months imprisonment. Petitioner asserts that he fulfilled his obligations under the agreement, and he denies that he ever agreed to modify the plea agreement to include the statutory maximum sentences. He asserts that federal law entitles him to specific performance of the original sentence agreement. Petitioner's second claim asserts that his plea was involuntary because it was induced by the unfulfilled sentence agreement. Petitioner, however, does not seek habeas relief conditioned on an invalidation of his plea and a grant of a new trial. Rather, Petitioner seeks only specific performance of the original agreement. (*See, e.g.*, Dkt. 9, p. 9; Dkt. 20, pp. 7, 15; Dkt. 27, pp. 13, 15; Dkt. 29, p. 3).

Respondent argues that despite errors in the initial plea agreement, after the trial court explained to the parties that Michigan law required a maximum sentence set by statute to go along with a minimum sentence, Petitioner ultimately agreed to the sentence that was imposed rather than withdraw his plea. Respondent asserts that Petitioner therefore waived any claim that he is entitled to the originally agreed upon sentence. Respondent further denies that Petitioner was coerced into entering into the revised sentencing agreement.

9

Petitioner rejoins that Respondent has suppressed what occurred at additional hearings held in the trial court that were not made part of the record. Petitioner asserts that during these proceedings Petitioner "vehemently objected to the plea withdrawal scenario and steadfastly asserted that he (petitioner) had complied with his end of the bargain and was entitled to specific performance of the plea deal." (Dkt. 27, 3-4). Petitioner states that the trial court's offer of a plea withdrawal was a "veiled threat," given that Petitioner had already admitted under oath to committing the crimes when he testified to the factual basis for the plea at the initial plea hearing. (*Id*. at 13). Petitioner further argues that there is no record evidence that he personally agreed to any modification of the plea agreement as attested to in the prosecutor's affidavit. (*Id*. at 7). Petitioner claims that when he was asked by the court whether he agreed with the sentence at the final sentencing hearing, he was merely indicating he understood what was happening, and he was not accepting the amended agreement. (*Id*. at 7-8).

The Michigan Court of Appeals summarily rejected Petitioner's claims "for lack of merit in the grounds presented," and the Michigan Supreme Court denied leave to appeal. Nevertheless, where the state appellate court has issued a summary affirmance, as here, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of § 2254(d). *Johnson v. Williams*, 133 S. Ct. 1088, 1094, 185 L. Ed. 2d 105 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (holding that a summary denial of leave to appeal by a Michigan appellate court is

10

considered a decision on the merits entitled to deference). Accordingly, in order to demonstrate entitlement to the relief he seeks, Petitioner must show that clearly established Supreme Court law entitles him to specific performance of the original plea bargain as opposed to having been given an opportunity to withdraw his plea.

*Santobello v. New York* constitutes clearly established Supreme Court law governing Petitioner's claims. 404 U.S. 257 (1971). In *Santobello*, the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 262. Under *Santobello*, however, the appropriate remedy for the government's breach of a plea agreement is *either* specific performance of the agreement *or* an opportunity to withdraw the plea. It is properly left to the discretion of the trial court whether to order specific performance of the plea agreement or to allow a defendant to withdraw his plea and proceed to trial. *Id*. at 262. The Supreme Court has noted that the Constitution does not require a trial court to order specific performance of a plea agreement rather than withdrawal of the plea. *Mabry v. Johnson*, 467 U.S. 504, 510, n. 11. (1984); *see also Puckett v. United States*, 556 U.S. 129, 137 (2009); *Peavy v. United States*, 31 F. 3d 1341, 1346 (6th Cir. 1994).

The plea bargain struck by the parties in this case called for a fixed term of 78 months for the most serious charges and lesser fixed terms for the other offenses. There is nothing in the record that suggests that the upper-end statutory maximums were implied or somehow otherwise understood to be part of the plea

11

agreement. And the Court will also accept Petitioner's unrebutted assertions that he complied with his end of the bargain by admitting his guilt and cooperating with authorities in the other prosecutions. It can also be assumed *arguendo* that Petitioner never abandoned his claim to specific performance in the trial court.

Petitioner makes a compelling argument that in such a situation—where the prosecution already received the benefit of Petitioner's promises—simply allowing Petitioner to withdraw his plea and stand trial is an inadequate remedy. Obviously, in such a situation, the prosecution gains the substantial benefit of a defendant's cooperation, and in return the defendant finds himself in a position no better than he was in when he was originally charged.

While this is true, it is also indisputably true that the plea agreement called for a sentence that was invalid under state law. Michigan has an indeterminate sentencing scheme, requiring both a minimum and maximum term to be imposed by the sentencing court. The maximum sentence is set by statute and the trial court determines the minimum sentence in accordance with the sentencing guidelines. See MICH. COMP. LAWS 769.8(1) ("When a person is convicted . . . for committing a felony and the punishment prescribed by law for that offense may be imprisonment in a state prison, the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term, except as otherwise provided in this chapter. The maximum penalty provided by law shall be the maximum sentence in all cases except as provided in this chapter and shall be stated by the judge in

12

imposing the sentence.") State law prohibited the trial court from imposing the fixed sentence agreed to by the parties.

Accordingly, and despite the inequities of the situation, when the matter came to light at sentencing, the trial court had no authority to allow Petitioner to specifically enforce a sentencing agreement with illegal terms. Instead—and as acknowledged by Petitioner—the trial court gave him the less appealing option to withdraw his plea. The offered remedy, though less beneficial to Petitioner, was not completely without value. It would have set aside Petitioner's convictions, restored his trial rights, and forced the prosecution to prove its case. It is true that Petitioner lost all the leverage he had to strike another deal, but after all, "there is no constitutional right to plea bargain . . . ." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).

While the remedy offered by the trial court was not ideal, it is difficult to see any other option. Courts confronted with this situation have noted that when a plea agreement is breached by the government because it contains an unfulfillable promise the only adequate remedy is to allow the defendant to withdraw his plea. *See, e.g.*, *United States v. Cooper*, 70 F.3d 563, 567 (10th Cir. 1995). Obviously, the trial court could not impose a sentence that violated state law. It therefore offered the only other remedy available under *Santobello*, a withdrawal of the plea and the resulting restoration of Petitioner's trial rights.

It was enough to satisfy *Santobello* that the trial court offered Petitioner the opportunity to withdraw his plea and stand trial. And therefore when the state

appellate courts summarily rejected Petitioner's claims, they did so without unreasonably applying clearly established Supreme Court law. *See, e.g.*, *United States v. Foster*, 527 F. App'x 406, 409-410 (6th Cir. 2013) (there is no authority for the proposition that when the government breaches a plea bargain the trial court must enforce the bargain rather offer a plea withdrawal).

Setting aside Respondent's waiver argument, Petitioner makes a powerful claim that his plea was nevertheless coerced in violation of Due Process because it was induced by the unenforceable sentence agreement. *See Brady v. United States*, 397 U.S. 742, 755 (1970) ("A situation in which a defendant is induced by deception, an unfulfillable promise, or misrepresentation to enter a plea of guilty . . . renders a plea involuntary.") And the facts of this case as alleged by Petitioner certainly support a claim to set the plea aside. But it is clear from Petitioner's pleadings both in the state courts and in this Court that he does not pray to have his guilty plea and conviction reversed, the only remedy he seeks is specific performance of the sentencing agreement, a remedy that the state court was not able to offer under clearly established Supreme Court law. Petitioner is not asking to have his plea set aside, whether it was involuntary or not, simply so that he can stand trial.

Accordingly, Petitioner's first two claims will be denied because clearly established Supreme Court law did not compel the state courts to grant him specific performance of the original sentencing agreement, his only exhausted form of requested relief.

14

**B. Speedy Trial**

Petitioner also claims that his right to a speedy trial was denied due to the protracted proceedings in the trial court. It is well-established, however, that an unconditional guilty plea constitutes a waiver of all pre-plea, non-jurisdictional constitutional deprivations. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Broce*, 488 U.S. 563, 569 (1989). The Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Simply stated, a defendant who pleads guilty or no contest waives any non-jurisdictional claims that arose before the entry of his plea. Speedy trial and pre-arraignment delay claims are non-jurisdictional issues which are waived by an unconditional plea. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) (speedy trial claim is not jurisdictional); *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 747 (E.D. Mich. 2005); *see also United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991) (failure to enter conditional guilty plea prevented defendant from raising speedy trial and due process challenges on appeal). Because Petitioner's claims concern the alleged deprivation of non-jurisdictional constitutional rights that occurred before the entry of his plea, review of his speedy trial claim is barred.

15

## C. Pending Motions

Petitioner has filed a motion for discovery and a motion for immediate consideration. (Dkts. 30 and 31). He seeks to prove that there was an agreement for a fixed sentence and that he never agreed to any other sentence. In light of the fact that the Court rejects Petitioner's claim to specific performance even assuming these allegations to be true, Petitioner's pending motions are denied as moot.

## IV. CERTIFICATE OF APPEALABILITY

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason could debate whether the petition should have been resolved in a different manner. Petitioner has made a strong showing that he only pled guilty due to an unfulfillable promise made by the prosecutor. The Court will therefore grant a certificate of appealability. The Court will also grant permission to appeal in forma pauperis because an appeal of this decision can be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. CONCLUSION

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** Petitioner's pending motions, 3) **GRANTS** a certificate of appealability, and 4) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: August 16, 2016        s/Terrence G. Berg
                                      TERRENCE G. BERG
                                      UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on August 16, 2016, using the CM/ECF system; a copy of this Order was also mailed to 13221 Woodward Ave, Rm. 518, Highland Park, Michigan 48203 directed to Petitioner's attention.

       s/A. Chubb
       Case Manager

17